

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00248-CV

**IN THE INTEREST OF A.M.M.**

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-01040
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Karen Angelini, Justice
Sandee Bryan Marion, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: October 29, 2014

AFFIRMED

Appellant Randy M. appeals the trial court's order terminating his parental rights to six-year-old A.M.M. In his first issue, he argues the trial court erred in terminating his parental rights because the Department of Family and Protective Services "did not prove that [he] had been served with required notice of the case." In his second issue, he argues the "trial court erred in judicially noticing parts of the State's file, when the State's file was not judicially noticeable, and Appellant timely objected to the court's taking judicial notice during the trial." We affirm.

## BACKGROUND

On April 30, 2013, the Department filed an original petition for protection of a child for conservatorship and for termination in a suit affecting the parent-child relationship. The Department also filed a motion for substituted service of citation by posting or other means, stating

that the Department had been unable to serve Randy M. by personal delivery, or registered or certified mail. The Department requested the trial court to order publication by posting citation at the courthouse door. Attached to the motion was an affidavit by Briana M. Alvarado, who affirmed she "exercised due diligence in attempting to locate the whereabouts of Randy M[.], Respondent, whose residence is unknown to affiant, or who is a transient person, and have been unable to locate him." Alvarado specified the efforts made to identify, locate, and serve Randy M.:

> Randy M[.] was found in the CPS case history of Michelle R[.],[1] and the number listed for him was used to attempt to contact Mr. M[.] The number . . . was disconnected. Caseworker located a number listed for Randy M[.]'s mother, Sylvia M[.], in the CPS case history. This number . . . was used to attempt to contact and locate Mr. M[.], but was disconnected. Caseworker asked Michelle R[.] [A.M.M.'s mother] for any contact information she had for Randy M[.], and [Michelle R.] stated that she did not have a contact number, or address for him, and has not had any contact with him since October 2011. Caseworker searched for Randy M[.] using the Texas Department of Criminal Justice offender search site, and was not able to locate him.

The trial court then signed an Order for Substituted Service by Posting. In the order, the court found that posting "a true copy of the citation with a copy of the petition attached at the courthouse door in Bexar County for a period of time not less than 7 days would be as likely as publication to give Respondent actual notice." Therefore, the court ordered that "service is authorized on Randy M[.] by posting a true copy of the citation at the courthouse door in Bexar County for a period of time not less than 7 days not counting the date of posting but including the last day of posting." The court also ordered that "[p]ursuant to Texas Rule of Civil Procedure 109a, proof and return of service shall be and is ordered that said return of citation of the Sheriff is to be filed with the paper of this cause." The court ordered the clerk to issue and the sheriff to post and return citation on Randy M. "in this case as is done in Texas Family Code cases generally." The return of citation in

---

[1] Michelle R. is A.M.M.'s mother. Michelle R. did not file a notice of appeal from the trial court's order terminating her parental rights.

the record reflects that on May 6, 2013, at 3:15 p.m., the sheriff executed the citation by posting it "on the courthouse door in the City of San Antonio, County of Bexar, in the State of Texas, for a period of seven days."

At the termination hearing on March 20, 2014, three witnesses testified. Jessica Franklin, a caseworker with the Department, testified that she had never had any contact with Randy M. When asked if Randy M. was notified of the lawsuit, Franklin replied, "I believe so, but I can't give you that answer right now." When asked what the Department had done to try and locate Randy M., Franklin testified,

> A quick search was done to find family members that may have been related to him. We attempted to call the numbers that came up on there. One of them was a possible mother or parent, which is Sylvia. She was contacted, and when we called to say – to ask if she had any knowledge of where Randy M[.] was, she hung up on the worker.

Franklin was then asked what other efforts the Department had made to try and locate Randy M. Franklin testified, "A diligent search. Nothing has come up that had been current or active information. We tried addresses that were listed and didn't receive anything back." In responding to whether there was anything more the Department could have done, Franklin stated, "No. We tried family members and we tried addresses that we could find, so no." When asked whether the Department reviewed "the diligent search report," Franklin replied, "Yes, we did." Franklin also confirmed that the Department followed up with all the addresses.

Vanessa Campanella testified that in 2010, this case was "in Family Based prior to it going to a legal removal" and that during that time period, Randy M. had not had any contact with A.M.M. On cross-examination, Campanella testified that she did not know whether the Department had served Randy M. with notice of the suit.

Briana Alvarado, an investigator with the Department, testified that Randy M. had not been involved with A.M.M. during the time that she investigated this case. According to Alvarado,

Randy M. had not ever contacted her about A.M.M. Alvarado testified that Michelle R., A.M.M.'s

mother, did not provide the Department with any information that would help locate Randy M.

According to Alvarado, she searched for Randy M.:

> I looked in [Michelle R.]'s MPAC history and was able to locate an old address and phone number for him, which I attempted to call, but I was not able to reach him, and I've also sent a certified letter to the address listed for him, but we received no response.

When asked on cross-examination whether she had any evidence that Randy M. received notice

of this lawsuit, Alvarado responded, "Just the certified letter I sent."

At the end of the termination hearing, the Department asked "the Court to take judicial

notice of the Court's file, to include the service of process information which I believe will show

the Court that cite by posting was done with regard to Mr. Randy M[.]" Randy M.'s attorney ad

litem objected "to the Court taking judicial notice of the file as it is not judicially noticeable." The

trial court then stated,

> The Court will take judicial notice of the following–not the entirety of the file, but the following: the pleadings, the service of process documents, the court orders, and any certificate of paternity registry search and Judge's notes.

The trial court then terminated Randy M.'s parental rights to A.M.M., finding that he had

constructively abandoned A.M.M. and had failed to complete a service plan. The trial court also

found that termination of Randy M.'s parental rights was in A.M.M.'s best interest.

## DISCUSSION

In his first issue, Randy M. argues that the Department "did not prove that [he] had been

served with required notice of the case." In his second issue, Randy M. argues the trial court erred

in taking judicial notice of parts of the court's file. In his summary of the argument, Randy M.

explains,

> None of Appellee's three witnesses could provide evidence of proper citation of Appellant. Appellant was, therefore, never properly cited about this lawsuit by the

> Texas Department of Family and Protective Services; so the Court's termination of his parental rights is a great injustice and should be reversed by this Court of Appeals. In addition, the trial court took improper judicial notice of the court's file, notice that should not and cannot cure the dearth of evidence of citation on Appellant. Documents which are not properly admitted as evidence cannot substitute for real evidence that has stood the test of the Texas Rules of Evidence, and been admitted after correct qualification on the record, by a witness or witnesses. Likewise, oral statements by the petitioner's attorney that citation occurred are not evidence of same, and cannot be allowed to stand in place of actual, admissible, evidence of citation.

It appears Randy M. is arguing that the record is insufficient to show that Randy M. was served with citation of suit. We disagree.

"Personal jurisdiction, a vital component of a valid judgment, is dependent upon citation issued and served in a manner provided for by law." *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (internal quotation omitted). "If service is invalid, it is of no effect and cannot establish the trial court's jurisdiction over a party." *Id.* (internal quotation omitted). The Family Code allows citation to "be served by publication as in other civil cases to persons entitled to service of citation who cannot be notified by personal service, or registered or certified mail, and to persons whose names are unknown." TEX. FAM. CODE ANN. § 102.010(a) (West 2014). Texas Rule of Civil Procedure 109 provides,

> When a party to a suit, his agent or attorney, shall make oath that the residence of any party defendant is unknown to affiant, and to such party when the affidavit is made by his agent or attorney, or that such defendant is a transient person, and that after due diligence such party and the affiant have been unable to locate the whereabouts of such defendant, or that such defendant is absent from or is a nonresident of the State, and that party applying for the citation has attempted to obtain personal service of nonresident notice as provided for in Rule 108, but has been unable to do so, the clerk shall issue citation for such defendant for service by publication. In such cases it shall be the duty of the court trying the case to inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant or to obtain service of nonresident notice, as the case may be, before granting any judgment on such service.

TEX. R. CIV. P. 109. Further, Rule 109a provides that "[w]henever citation by publication is authorized, the court may, on motion, prescribe a different method of substituted service, if the

court finds, and so recites in its order, that the method so prescribed would be as likely as publication to give defendant actual notice." TEX. R. CIV. P. 109a.

In support of his argument, Randy M. cites a recent case from the Texas Supreme Court: *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). In that case, the supreme court emphasized that Texas Rule Of Civil Procedure 109 requires a trial court to "inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant . . . before granting any judgment on such service." 385 S.W.3d at 564 (quoting TEX. R. CIV. P. 109). The court explained that "[a] lack of diligence makes service by publication ineffective." *Id.* And, a "diligent search must include inquiries that someone who really wants to find the defendant would make, and diligence is measured not by the quantity of the search but by its quality." *Id.* at 565. The court pointed out that the "uncontroverted evidence here establishes a lack of diligence." *Id.* In particular, the court emphasized the record showed that even if the appellant's address was not "reasonably ascertainable," "an address was unnecessary for personal service on [Appellant] L.R. because she visited the Department's offices during the relevant time period." *Id.* "When a known parent has not left the jurisdiction, when she has attended at least two court hearings and has come to the Department offices for a prescheduled, hour-long meeting with her children during the very period service was being attempted, and when the Department can reach her by telephone and can communicate with her family members, service by publication cannot provide the kind of process she is due." *Id.* According to the court, "it was both possible and practicable to more adequately warn L.R. of the impending termination of her parental rights, and notice by publication was therefore constitutionally inadequate." *Id.* at 566.

Although Randy M. cites *In re E.R.* for support, the facts of that case are distinguishable. In the present case, the record shows the Department exercised due diligence in attempting to ascertain the residence or whereabouts of Randy M. While the appellant in *In re E.R.* had had

contact with the Department before the termination petition was filed, in this case the Department's witnesses testified that no contact had ever been made with Randy M. Franklin testified a search had been done to find family members who may have been related to Randy M. The Department attempted to reach possible family members who came up during that search and did talk to a possible mother named Sylvia, but that person hung up the phone when she was asked if she had any knowledge of Randy M.'s whereabouts. Franklin testified that they tried all the addresses they could find and followed up with all the addresses, but were not able to locate Randy M. According to Alvarado's testimony at the hearing, Michelle R., A.M.M.'s mother, did not provide the Department with any information that would help locate Randy M. Alvarado testified she looked into Michelle R.'s MPAC history and was able to locate an old address and phone number for Randy M., which she called; however, she was not able to reach him. Alvarado also tried to serve Randy M. by sending a certified letter to the address listed for him, but received no response. Thus, the record in this case shows the Department acted with due diligence in attempting to locate Randy M. There was also evidence that the Department could not locate Randy M. to serve him personally and that the Department attempted to serve him by certified mail but was unable to do so.

Randy M. also argues that none of the State's witnesses "could provide evidence of proper citation of Appellant." According to Randy M., "oral statements by the petitioner's attorney that citation occurred are not evidence of same, and cannot be allowed to stand in place of actual, admissible, evidence of citation." It appears that Randy M. believes the State needed the sheriff who signed the return of service to testify at the termination hearing. No such testimony, however, was needed at trial. The Texas Supreme Court has explained that "[f]or well over a century, this court has required that strict compliance with the rules for service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack." *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). The supreme court has emphasized that "[t]he return of

service is not a trivial, formulaic document." *Id.* "It has long been considered prima facie evidence of the facts recited therein." *Id.*; *see Gatlin v. Dibrell*, 74 Tex. 36, 11 S.W. 908, 909 (1889) ("The return of the officer imports absolute verity, and was sufficient to authorize the rendition of judgment upon default . . . ."). "The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party." *Primate Constr.*, 884 S.W.2d at 152. Here, the sheriff's return of service was filed and is part of the record. It shows that on May 6, 2013, at 3:15 p.m., the sheriff executed the citation "by posting the citation on the Courthouse door in the City of San Antonio, County of Bexar, in the State of Texas for a period of seven days." This filing appears affirmatively in the record and is prima facie evidence of the facts cited therein. And, those facts have not been rebutted by Randy M. in any fashion. Thus, the record does support that Randy M. was properly served with citation.

Finally, Randy M. argues the trial court erred in taking judicial notice of parts of the court's file, specifically the parts dealing with service of process. We need not decide this issue because (1) there was evidence at the termination hearing to support due diligence in locating Randy M.; and (2) as explained previously, there was no need for any evidence to be presented at the termination hearing regarding the sheriff's return of service as it was filed and is part of the record.

We affirm the trial court's order terminating Randy M.'s parental rights.


Karen Angelini, Justice