**REVERSE and REMAND In Part; and Opinion Filed May 29, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-18-01297-CV
_____

### IN THE INTEREST OF M.K. AND V.G., CHILDREN

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-30160-2017**

## MEMORANDUM OPINION

Before Justices Whitehill, Pedersen III, and Nowell
Opinion by Justice Pedersen III

This is an appeal from the termination of the parental rights of L.B.K. (Father) to his daughter, M.K. Father raises three appellate issues, challenging the legal and factual sufficiency of the evidence to support the termination of his rights and the appointment of the Texas Department of Family and Protective Services (the Department) as sole managing conservator of M.K. We reverse two specific rulings in the trial court's Final Order in Suit Affecting the Parent-Child Relationship [and] Appointment of Sole Managing Conservator (the Final Order) and remand this case for further proceedings.

### Background

At trial, the Department sought to terminate all parental rights to two children: M.K., who was four years old at the time, and her infant half-brother, V.G. In October 2017, the Department

1

responded to a referral and found M.K., V.J. (Mother), and J.G., Mother's boyfriend, living in an abandoned metal shipping crate. The crate was filthy and littered with drug paraphernalia. The Department described M.K.'s condition as dirty and malnourished. She was wearing a pull-up containing dried feces, and she told investigators that she sometimes ate food from a dumpster. Mother was approximately seven months pregnant with V.G. at this time. The Department filed its Original Petition for Protection of the Child [and] for Temporary Managing Conservatorship in Suit Affecting the Parent-Child Relationship. During the course of the Department's investigation, both Mother and J.G. tested positive for amphetamines and methamphetamines. When a subsequent test of M.K.'s hair proved positive for amphetamines and methamphetamines as well, Mother was arrested for child endangerment, and the Department took custody of M.K. When V.G. was born months later, the Department took custody of him as well. The trial court named the Department temporary managing conservator of the children.

At the time of these events, Father lived in an apartment in South Carolina with his girlfriend and their young son. He was not involved in any way in the circumstances surrounding removal of M.K. The record indicates that he had no idea where Mother and M.K. were living until he was contacted by the Department sometime after M.K. was placed in the Department's care. The trial court's initial temporary order included a number of services required for Mother and J.G.; the sole reference to Father was to require a paternity test. Father submitted to the test, and it confirmed that he is M.K.'s biological father.

Following a status conference in February 2018, the trial court ordered Father to complete a list of services:

Parenting education as recommended by CPS,

Psychological evaluation or psycho-social evaluation as recommended by CPS,

Counseling,

2

Drug/alcohol assessment and following all recommendations,

Random drug and alcohol urinalysis/hair strand tests and oral swabs,

Maintenance of stable, suitable housing, and

Maintenance of suitable, stable, legal employment.

The trial court issued other temporary orders throughout this proceeding, but these provisions did not change. The order's provisions were incorporated into the Department's Family Services Plan (the Plan). The Department's permanency goal according to the Plan was "Family Reunification."

The trial court's imposition of these obligations was apparently based upon the following allegations, the only ones related to Father within the Plan:

> [Mother] reported that there was domestic violence in their relationship with [Maternal Grandmother] reporting that she went to get [Mother] and [M.K.] from [Father] due to [Father] locking [Mother] and [M.K.] in a shed. [Father] also has 3 warrants in Ohio involving drugs. Due to these reports, [M.K.] would be at risk for harm in his care.

The eight-page Plan is signed by the caseworker assigned to these parties, Deborah Pendergrass; it is not signed by Father. Pendergrass testified at trial that she "explained" the Plan to Father by email. That email is not included in our record.

Neither the trial court's order nor the Plan required Father to contribute support to M.K. And when M.K. was temporarily placed in foster care with a member of Father's extended family, Father was ordered not to have contact with her. Shortly after the Plan was created, Father answered the Department's petition and filed his Counter-Petition for Permanent Managing Conservatorship in Suit Affecting the Parent-Child Relationship.

The trial court held a permanency hearing in June 2018. Shortly before the hearing, Father told Pendergrass that he was not able to take M.K. at that time, but that he and his girlfriend were in the process of trying to "get on their feet." Following the hearing, the judge signed an order continuing Father's earlier-ordered obligations and approving the Department's June 12, 2018

Family Service Plan Evaluation (the Evaluation), which likewise continued Father's same obligations. The Evaluation continued the status of all involved parties: the Department remained the Temporary Managing Conservator of M.K., and Father (along with Mother) remained the child's Temporary Possessory Conservator. The significant change from the Department's Plan was the Department's stated permanency goal, which was now to have M.K. adopted by a member of Father's extended family. To accomplish that goal, Father's parental rights would have to be terminated.

And so, less than two weeks after the trial court's permanency order was signed, the Department amended its pleading, filing its Second Amended Petition for Protection of Children, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. The amended petition, *inter alia*, set forth thirteen purported grounds for termination of Father's parental rights.

At trial, four months later, the Department narrowed that list to four predicate grounds for termination in Father's case: failure to support M.K. while she was in Department custody (TEX. FAM. CODE ANN. § 161.001(b)(1)(F)), constructive abandonment of M.K. during that same time (*id.* § 161.001(b)(1)(N)), contumacious failure to submit to a court order (*id.* § 161.001(b)(1)(I)), and failure to comply with a court order specifically establishing actions necessary to obtain M.K.'s return (*id.* § 161.001(b)(1)(O)). The Department presented two witnesses at trial, Pendergrass and Michael Lingk, the children's Court Appointed Special Advocate (CASA), who served as their guardian ad litem.

Pendergrass testified that she generally communicated with Father by text or email. In those communications, Father asked about M.K. She acknowledged that Father was not responsible for the Department's involvement with M.K., but she testified that Father had not

4

completed any of the services he had been ordered to complete. She based that testimony on the fact that Father had not submitted any evidence of his completion of services to her, as the Plan required. She testified that she had sent Father to "a random drug test." She made that request the week before trial. Father initially told her that "a lot of" the drug labs were closed because of Hurricane Michael and that it would be difficult for him to get the test. Nevertheless, Father did take the test, and the results were negative for all banned substances.[1] Pendergrass acknowledged that Father lived in an apartment with his girlfriend and that he cared for their young child while his girlfriend worked. She conceded that Father's parental skills had not been assessed. She testified further that Father had three outstanding warrants in Ohio for domestic violence and unlawful restraint. She stated that Father told her in June that he and his girlfriend were trying to get back on their feet, but they were not able to take care of M.K. at that time. She acknowledged that in October, shortly before trial, Father told her that he believed he was going to start a job at Walmart. Finally, Pendergrass testified that while the Department had a "tentative" future plan for M.K., the child was not in a "forever home" at that time.

Lingk testified that he had visited M.K. in her placement at the time of trial and that he had no concerns about her well-being. He said he was in favor of terminating Father's rights and believed that termination would be in M.K.'s best interest because Father had not followed the Department's Plan. Lingk said he had spoken several times with Father by phone and that they had texted and emailed. In response to a question, Lingk stated that he believed domestic violence was a concern with Father "[f]rom what [Mother] and her family has said" and "from the outstanding warrants."

---

[1] This was the only specific testimony concerning drug tests for Father. When Father's counsel pressed Pendergrass concerning a lack of any positive drug test, she retorted "That's because he didn't take the other drug tests that I asked you to ask him to take." Although the trial court appears to have assumed there were other requests for drug tests, the record does not contain evidence of any other requests.

At the close of trial, the court concluded that the Department could not rely on subsections (F) and (N) as grounds for termination, because Father had not been ordered to pay child support and he had been ordered to have no contact with M.K. In response to Father's motion for new trial, the court also dismissed subsection (I) as a ground for termination in this case. Thus, the only remaining ground supporting the trial court's termination order was subsection (O).

The Final Order includes a finding that Father failed to comply with the court's order specifically establishing the actions necessary for Father to obtain M.K.'s return and a finding that termination of Father's rights was in M.K.'s best interest. Based on those two findings, the trial court terminated Father's parental rights to M.K. and appointed the Department to be M.K.'s sole managing conservator.

Father appeals.[2]

**Termination of Father's Parental Rights**

The involuntary termination of parental rights involves fundamental constitutional rights. *In re G.M.*, 596 S.W.2d 846 (Tex. 1980). The Supreme Court has stated that a natural parent's desire for—and his right to—the companionship, care, custody, and management of his child is an interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982). A termination decree is final and irrevocable, divesting for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Courts have recognized that termination of a parent's rights to his child is "traumatic, permanent, and irrevocable." *In re M.S.*, 115 S.W.3d 534, 549 (Tex. 2003). For these reasons, the Texas Family Code and the Due Process Clause of the United States Constitution require that grounds for termination of parental

---

[2] In the same Final Order, the trial court also terminated the parental rights of Mother and J.G., the father of V.G. Only Father has appealed.

rights be proved by clear and convincing evidence. TEX. FAM. CODE § 161.001; *Santosky,* 455 U.S. at 753–54. And for the same reasons, we strictly construe involuntary termination statutes in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012).

To apply the clear and convincing evidence standard of proof in parental termination cases, we ask whether the proof is such that a reasonable fact finder could have formed a firm belief or conviction about the truth of the allegations. *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). In our legal sufficiency review, we consider all the evidence in the light most favorable to the finding. *Id.* at 266. We assume that the fact finder resolved disputed evidence in favor of the finding if a reasonable fact finder could do so, and we disregard all contrary evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* For a trial court to terminate a parent's right to his child, the State must prove by clear and convincing evidence that the parent committed an act prohibited under the family code's section 161.001(b)(1) and that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(1–2).

Because Father's second issue is dispositive of this appeal, we begin our analysis there. Father challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that terminating Father's parental rights to M.K. is in her best interest. The Department must establish by clear and convincing evidence that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(2). But there is a strong presumption that the child's best interest will be served by preserving the parent-child relationship. *In re J.F.C.*, 96 S.W.3d at 294.

The Department relied on the CASA volunteer to offer evidence of the best interest of M.K. in this case. As to Father, Lingk's entire testimony on this issue was the following exchange:

Q.    Okay. Is CASA in support that [Father's] parental rights be terminated as to [M.K.]?

A.    Yes.

Q.     Why is that in [M.K.'s] best interest to terminate her father's rights?

A.     Because I don't think he has shown the -- in her best interest following the service plan from CPS.

Lingk did not identify any specific provision of the Plan that—if not "followed" by Father—would implicate M.K.'s best interest in an identifiable way.

We acknowledge that the same evidence may be probative of the Department's allegations under section 161.001(b)(1) and section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). But we have particular concerns with M.K.'s best interest being supported primarily by this general reference to violation of section 161.001(b)(1)(O). That section can serve as a predicate act for involuntary termination if the Department proves by clear and convincing evidence that the parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months *as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.*

TEX. FAM. CODE § 161.001(b)(1)(O) (emphasis added). The Texas Supreme Court has held that subsection (O) requires the Department to prove that the child was removed from her parent because of abuse or neglect. *In re E.C.R.*, 402 S.W.3d 239, 246 (Tex. 2013); *see also R.J.O. v. Tex. Dep't of Family & Protective Servs.*, No. 03-13-00478-CV, 2013 WL 6060778, at *1 (Tex. App.—Austin Nov. 13, 2013, no pet.) (evidence insufficient to terminate father's rights under section (O) when children were in mother's custody when they were removed, father was not living in house with children, and they were not removed from father's care). The Department offered evidence that M.K. was placed in the conservatorship of the Department as a result of abuse and neglect by Mother and J.G. But Pendergrass confirmed at trial that Father was not responsible for the Department's involvement or for M.K.'s removal in this case. Given that the evidence undermines

application of subsection (O), we conclude that Lingk's conclusory reference to Father's failure to follow the Department's Plan cannot serve as clear and convincing evidence of M.K.'s best interest.

In determining whether termination was in the child's best interest, we may consider several factors, including (1) the child's desires, (2) the emotional and physical needs of the child and the emotional and physical danger to the child now and in the future, (3) the parental abilities of the individuals seeking custody, (4) the plans for the child by those individuals and the stability of the home, (5) the plans for the child by the agency seeking custody and the stability of the proposed placement, and (6) the acts or omissions of the parent which may indicate the existing parent-child relationship is not a proper one, and (7) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

M.K. was very young at the time of trial, and the Department offered no evidence of her desires. Nor did it offer evidence of unusual emotional and physical needs of M.K.; her CASA testified he had no concerns about her well-being. Accordingly, the first two factors are neutral in our analysis. Pendergrass acknowledged at trial that father's parental abilities had not been assessed by the Department, but she also conceded that he was providing the daily care for his young son while the boy's mother worked. And as to the plans for M.K. by the respective parties, Father has sought to be named permanent managing conservator of M.K., while the Department has acknowledged that it has no permanent placement plan for her. Thus, we conclude the third, fourth, and fifth factors weigh against termination.

The Department argues in this Court that Father was "a fugitive from justice due to his outstanding warrants, and those charges were related to M.K. and his ability to maintain a relationship with [the] mother of his child." Pendergrass testified that Father had three outstanding

warrants in Ohio for domestic violence and unlawful restraint. That testimony was repeated once by Lingk and was argued to the trial court to support termination. But both the Plan and the Evaluation, in their recitation of facts, assert that Father has three outstanding warrants involving drugs, not family violence. The warrants were not introduced into evidence and are not included in our record. Indeed, the record suggests that the Department's information about these warrants came solely from Mother and from her mother, who Mother wanted to have custody of the children when they were removed by the Department. But whatever the source, Pendergrass's testimony conflicts with her own recitation of facts in the Plan. If the Department relies on an alleged offense in termination proceedings, it bears the burden of introducing evidence concerning the offense and establishing that the offense was part of a course of conduct that endangered the child's well-being. *In re E.N.C.*, 384 S.W.3d 796, 805 (Tex. 2012). It failed to provide that evidence. We conclude the Department failed to establish any acts or omissions by Father that would show his existing parent-child relationship is not a proper one. Therefore, neither the sixth nor seventh *Holley* factors support termination.

The record contained affirmative evidence that at the time the trial court terminated his parental rights Father had a safe and stable home. He was the primary caregiver for his young son. He had prospects for employment. He was not using drugs. And he had filed a petition seeking custody of M.K. The record as a whole may not have established that Father was ready to take on her full custody. But no reasonable factfinder could have formed a firm belief or conviction that termination of Father's parental rights at this time was in M.K.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is legally insufficient to support the trial court's finding to the contrary.

We do not conclude that M.K.'s best interest is to be transferred immediately to Father's custody and control. It is possible that her best interest is to remain for some time with another family member while Father's status is evaluated. But the Department is required to meet its burden of proof, and the evidence introduced at trial fails, at this juncture, to overcome the presumption in favor of preserving the parent-child relationship.

We sustain Father's second issue.[3]

## Appointment of the Department as Conservator

In his third issue, Father contends the trial court erred by naming the Department M.K.'s sole managing conservator. We review a court's conservatorship order for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

We have concluded that the trial court's termination of Father's parental rights was not supported by sufficient evidence. Accordingly, Father's pre-termination status as temporary possessory conservator of M.K. should be reinstated. Likewise, the Department's pre-termination status as temporary managing conservator of M.K. should be reinstated. In the absence of termination of both of M.K.'s parents' rights, appointing the Department as sole managing conservator would be an abuse of discretion.

We sustain Father's third issue.

---

[3] Given our resolution of Father's best-interest challenge, we do not reach his challenge to the sufficiency of the evidence supporting the trial court's finding under section 161.001(b)(1)(O). Nor do we reach appellant's challenge to the specificity of the trial court's orders and the Department's Plan. *See In re N.G.*, No. 18-0508, 2019 WL 2147263, at *6 (Tex. May 17, 2019) (per curiam). We express no opinion on those challenges to the Final Order.

**Conclusion**

We reverse the trial court's Final Order as to termination of Father's parental rights and as to the Department's appointment as sole managing conservator of M.K. We remand this case for further proceedings in accordance with this opinion.


/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE


181297F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF M.K. AND V.G., CHILDREN

No. 05-18-01297-CV

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-30160-2017.
Opinion delivered by Justice Pedersen, III.
Justices Whitehill and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and **REMANDED** in part. We **REVERSE** that portion of the trial court's judgment (1) terminating the parental rights of LaChester Brandon Kitchings to Mae' Ana Kitchings, and (2) appointing the Texas Department of Family and Protective Services as sole managing conservator of Mae' Ana Kitchings. No other aspect of the trial court's judgment has been challenged in this appeal.

We **REMAND** the reversed portion of this cause to the trial court for further proceedings consistent with this opinion.

Judgment entered this 29th day of May, 2019.

13