

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00215-CV

———————————————

IN THE INTEREST OF N.M., A CHILD

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-107692-18

Before Gabriel, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Guy Moore (Father) appeals from the trial court's order terminating his parental rights to his son, Nathan Moore.[1] In a sole point, he argues that the evidence was factually insufficient to support the trial court's finding that the termination of his parental rights was in Nathan's best interest. Because the entire record allowed the trial court to have formed a firm belief or conviction that termination was in Nathan's best interest, we affirm the trial court's judgment.

## I. BACKGROUND

In June 2018, police officers conducted a traffic stop of a car driven by Father. Nathan's mother Annie Post (Mother), two-year-old Nathan, and Mother's older daughter Cathy were also in the car. The officers arrested Mother after discovering she had a warrant regarding a fraud charge in Oklahoma and noted a strong marijuana smell emanating from Father's car. Father said that both children were his, but the officers determined that Cathy was classified as a missing person based on a custodial-kidnapping alert created at the request of Cathy's father who lived in New York. Cathy had been missing for over a year. The officers removed Cathy and Nathan, and Cathy was reunited with her father the next day. The Department of Family and Protective Services (DFPS) took custody of Nathan after obtaining an emergency custody order and filed a suit affecting the parent-child relationship, seeking to reunite

---

[1]We use aliases to refer to the minor child and his family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b).

Father and Mother with Nathan or to terminate their parental rights if reunification could not be achieved.

When Nathan was placed in a foster home, he had speech and developmental delays, which Father and Mother had not noticed. Nathan also had "difficulties" and "behaviors" when he was initially placed in DFPS's custody:

> [Nathan was] very possessive over objects and things, more so than your typical two year old. He actually claimed a couch in the [foster] home and wouldn't let anybody touch it, stand near it, sit on it. He didn't want to eat with the family. There was his palate with his food was not very broad. [Nathan] didn't like really vegetables, he didn't really like fruits. His palate wasn't very healthy.

Joel Juarez, a DFPS investigator, talked to Father soon after Nathan was placed in DFPS's custody. Father admitted that he abused marijuana and opiates and that he cared for the children while using marijuana. Indeed, Nathan tested positive for marijuana exposure shortly after he was placed in DFPS's custody.

Father was confirmed to be Nathan's father, and he and Mother were placed under a service plan. The plan required Father and Mother to find safe and stable housing, maintain financial stability, undergo drug testing, participate in therapy, and complete alcohol- and drug-abuse treatment. Father was told that his compliance with the safety plan would be a factor in deciding whether he could be reunited with Nathan.

The only employment Father reported to DFPS was his self-employment as a car detailer and doing "odd jobs"; however, he could not provide proof of the

3

"decent amount of money" he reportedly made. Mother was unemployed. Mother and Father were uncooperative with DFPS's attempts to arrange a home visit of her and Father's living conditions, and Mother admitted where she and Father lived was not a stable environment. In fact, they were living in weekly hotels after being evicted from other living arrangements.

Father and Mother provided no proof that they were attending alcohol- and drug-abuse meetings. Neither successfully completed any form of drug treatment. While the service plan was in place, Mother abused and tested positive for opiates and admitted she used marijuana. Father tested positive many times for marijuana, continued to abuse opiates, and admitted that he had repeatedly exposed Nathan to second-hand marijuana smoke. Both Mother and Father missed or were late for the majority of their scheduled visits with Nathan. Mother and Father remained a couple throughout DFPS's conservatorship.

In November 2018, Father approached a man at a gas station to ask him if he needed his car detailed. Mother then allegedly took $60 dollars from the man without his consent. While they were driving away, Father allegedly hit the man with his car.[2] A grand jury indicted Mother with theft. In early 2019, Mother and Father convinced three elderly people to give them approximately $25,000 by lying that they had sick

---

[2]Father alternately denied or pleaded the Fifth Amendment to this offense; however, his invocation of the Fifth Amendment allowed the trial court to draw adverse inferences regarding the incident. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *In re C.J.F.*, 134 S.W.3d 343, 352 (Tex. App.—Amarillo 2003, pet. denied).

triplets who required food and medicine that Mother and Father could not afford. Both were indicted with three counts of exploitation of the elderly.

DFPS investigated the possibility of placing Nathan with Father's mother, Sandra Moore. During its investigation of Sandra as a possible placement for Nathan, Sandra admitted that she used marijuana every evening to relax and stated that marijuana was "one of [her] only friends." Sandra lived with her daughter and her daughter's three children in a two-bedroom apartment. The two school-aged children did not attend school, and Sandra was unemployed. Sandra did not comply with any of DFPS's requests in order to show that she was an appropriate placement for Nathan.

Although DFPS's initial, primary goal was reuniting Nathan with Mother and Father, by the time of trial, DFPS sought the termination of Mother's and Father's parental rights and an unrelated adoption for Nathan. At trial, Father testified that he was not ready to have Nathan even though he had had eleven months to prepare. Father was arrested during a break in the trial for violating his bond conditions after a urinalysis showed he had been using marijuana. Mother testified that she knew Father had driven Nathan while under the influence of drugs and alcohol and that he would smoke marijuana in the car while she and Nathan were present. She also admitted that she had not provided Nathan with a safe and stable environment.

Cortney Tiffany, the DFPS conservatorship worker assigned to Nathan's case, testified to Mother's and Father's failures to comply with the service plan and their

drug abuse. She pointed out that their drug use continued throughout the case, rendering them unable to provide Nathan with a safe and stable environment. Tiffany testified that Nathan was doing well in his foster home and that his foster parents were motivated to adopt him if Mother's and Father's parental rights were terminated. Although Nathan's visits with Mother and Father went well and he was bonded to his parents, Tiffany believed termination was in Nathan's best interest because it would afford him permanency. Since his removal, Nathan had "done quite well" and had "hit" all of his developmental milestones. Nathan's attorney ad litem agreed that termination was in Nathan's best interest.

The trial court determined by clear and convincing evidence that Father had engaged in conduct justifying the termination of his parental rights[3] and that termination was in Nathan's best interest:

> In considering conservatorship, [the] Court finds that it is in the child's best interest to grant permanent managing conservatorship to [DFPS]. The Court finds that in considering the best interest that the - - while there was some evidence of the child's bond [with Father] and there's no doubt that there is a bond between all children and their parents of some sort, the Court did weigh[] this with the other best interest factors. [The] Court finds that the emotional and physical needs of the child have not been met by the parents prior to removal nor since removal but the

---

[3]Specifically, the trial court found that Father had engaged in endangering conduct or allowed Nathan to be with persons who engaged in such conduct, that Father had failed to comply with the service plan, and that Father had failed to complete a court-ordered substance-abuse program and continued using controlled substances. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O), (P). The trial court also terminated Mother's parental rights based on clear and convincing evidence, but Mother has not appealed the termination order.

6

emotional and physical needs of the child have been met by [his] placement family.

[The] Court finds that the parties' behavior and ongoing behavior throughout this case that . . . in fact seem to even have worsened, that [the] emotion[al] and physical danger they present to the child is another consideration it's not in the child's best interest to not [sic] be in that environment. They have not demonstrated the parental ability necessary to parent [Nathan]. There have been programs to assist them with their parenting and with [Nathan] and they have chosen not to take advantage of it. They haven't demonstrated any plans for the child; however, [DFPS] demonstrates a clearly laid out plan to - - for adoption hopefully with the foster family.

[Father's] plans for the child were perhaps maybe to place the child with someone in his family; however, it has been almost a year and none of that has happened and it's not in the child's best interest to remain in limbo with people that can't make plans for him and the instability of mother and father's home is not in the child's best interest. I want to make it very clear that the Court is not considering whether or not the child attended a public school or was home schooled. That is not even a consideration here. It's not a consideration that you are low income and it's not even a consideration for me that you live in a hotel because there's nothing wrong with that. It's the instability and moving around from place to place and subjecting him to the continued drug use and the continued criminal charges that creates instability in the Court's eyes.

The acts and - - the stability of the placement where the child has been in the last 12 months due to [DFPS's] placement is in the child's best interest. The acts or omissions of the parents to . . . complete their service plan and to create a stable home environment for the child are also a consideration and the Court does not find that there is any excuse for the acts, the omissions you've done and the . . . violation of the bond condition which was clearly admitted to on the record. That is not in the child's best interest.

*See* Tex. Fam. Code Ann. § 161.001(b). Father requested findings of fact and

conclusions of law, but did not file a notice of past due findings and conclusions. *See*

7

Tex. R. Civ. P. 296–97. *See generally In re A.S.*, No. 02-16-00076-CV, 2016 WL 3364838, at \*6 (Tex. App.—Fort Worth June 16, 2016, no pet.) (mem. op.) (discussing discretionary nature of request for findings and conclusions in context of termination appeal).

## II.  BEST INTEREST

### A.  SCOPE OF FATHER'S CHALLENGE

Father appeals, Mother does not.  Father asserts that the evidence was factually insufficient to show that termination of his parental rights was in Nathan's best interest:

> The father maintained that he had provided for his son for the two years prior to [DFPS's] involvement in his life.  There was no evidence that the child was ever neglected or mistreated prior to the [DFPS] removal.  The father believed that the quality care he and his wife provided for the child in his early years clearly established that he could provide that level of care in the future.

He argues that the "case comes down to the father's drug use" and that his abuse of marijuana and "infrequent" use of opiates does not sufficiently show Nathan's best interest would be served by termination.

Father does not challenge any of the conduct grounds upon which the trial court terminated his parental rights.  *See* Tex. Fam. Code Ann. § 161.001(b)(1).  Nor does he argue that the conduct grounds cannot be considered in our best-interest analysis because they, in turn, were supported by insufficient evidence.  *See In re A.M.*, No. 02-19-00023-CV, 2019 WL 3334420, at \*6 (Tex. App.—Fort Worth July 25,

8

2019, no pet. h.) (mem. op.).  Accordingly, we address only the best-interest finding in the context of our sufficiency review.  *Cf. In re N.G.*, 577 S.W.3d 230, 235–37 & n.1 (Tex. 2019) (per curiam) (holding "[w]hen a parent has presented the issue on appeal," due process and due course of law require an appellate court to review evidentiary sufficiency of endangerment grounds under section 161.001(b)(1)(D)–(E) even if termination may be supported by a different conduct ground).

## B.  STANDARD AND SCOPE OF REVIEW

Although the parent-child relationship is to be protected, it may be terminated upon a showing by clear and convincing evidence that the parent's actions satisfy a statutory ground justifying termination and that termination would be in the child's best interest.  *See* Tex. Fam. Code Ann. §§ 161.001(b), 161.206; *In re E.R.*, 385 S.W.3d 552, 554–55 (Tex. 2012).  Evidence is clear and convincing if it "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code Ann. § 101.007.  A child's best interest is a trial court's "primary consideration" when determining conservatorship, possession, and access to a child.  *Id.* § 153.002.  And although we presume that keeping a child with a parent is in a child's best interest, we may not sacrifice the emotional and physical interests of the child merely to preserve the rights of a parent.  *See id.* § 153.131(b); *In re E.C.R.*, 402 S.W.3d 239, 240 (Tex. 2013).

In a factual-sufficiency review, we consider the entire record, giving due deference to the fact-finder's findings.  *See In re A.B.*, 437 S.W.3d 498, 500 (Tex.

9

2014). Evidence is factually sufficient to support a trial court's section 161.001(b)(2) finding if the trial court could have reasonably formed a firm conviction or belief that the termination of the parent-child relationship between Father and Nathan would be in Nathan's best interest. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). In our review of the trial court's best-interest finding, we are to examine several factors, including but not limited to (1) Nathan's age and emotional and physical needs now and in the future; (2) the results of psychiatric, psychological, or developmental evaluations of Nathan, Father, or others who have access to Nathan's home; (3) whether there is a history of substance abuse by Nathan's family or others who have access to Nathan's home; (4) the willingness and ability of Nathan's family to seek out, accept, and complete counseling services; (5) the willingness and ability of Nathan's family to effect positive environmental and personal changes within a reasonable period of time; (6) Father's parenting skills; (7) the availability of an adequate social support system for Nathan; (8) Father's and DFPS's plans for Nathan; (9) Father's acts or omissions that indicate the existing parent-child relationship is not a proper one; and (10) any excuse for Father's acts or omissions. *See* Tex. Fam. Code Ann. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

### C. APPLICATION OF STANDARD TO RECORD EVIDENCE

We conclude that the evidence reflected in the record allowed the trial court to form a firm conviction or belief that the termination of Father's parental rights was in Nathan's best interest. Father does not dispute that he endangered Nathan, allowed

him to remain in endangering circumstances, failed to comply with the service plan, and failed to complete a court-ordered, drug-treatment program. He also admitted that he was not ready to care for Nathan even though he had been under a service plan for close to twelve months. Sandra was an inappropriate placement for Nathan because of her living situation and her daily use of marijuana. Father similarly abused marijuana and opiates, testing positive multiple times while under a service plan and failing to submit to other tests.[4] He tested negative for drug use only once. Father missed or was late for half of his supervised visits with Nathan. Father could not provide proof of employment or income and lived in a weekly hotel.

At the time of trial, Father had been indicted for exploiting the elderly and had violated his bond conditions by testing positive for marijuana use. He had also allegedly been involved in helping Mother steal money from a man at a gas station. Tiffany was concerned that Nathan would be caught up in Father's and Mother's criminal behaviors. Nathan's speech and developmental delays improved after he was removed from Mother and Father's care. Nathan was doing well with his foster family, and they wanted to adopt him. Tiffany testified that neither Father nor Mother could provide Nathan with a safe and stable environment. This evidence, relevant to the applicable factors, was factually sufficient to support the trial court's

---

[4]During DFPS's direct examination of Father at trial, the trial court interjected and asked Father if he was then under the influence of opiates, marijuana, another controlled substance, or any medication. Father said that he was not.

11

best-interest finding. *See, e.g.*, *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *9 (Tex. App.—San Antonio Aug. 21, 2019, no pet. h.) (mem. op.); *In re C.A.*, Nos. 07-18-00439-CV, 07-18-00440-CV, 2019 WL 2403168, at *3–4 (Tex. App.—Amarillo June 6, 2019, pet. denied); *In re E.R.W.*, 528 S.W.3d 251, 266–67 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *In re T.S.*, No. 02-17-00047-CV, 2017 WL 2290195, at *2–3 (Tex. App.—Fort Worth May 25, 2017, no pet.) (mem. op.); *In re M.R.*, 243 S.W.3d 807, 820–22 (Tex. App.—Fort Worth 2007, no pet.).

## III. CONCLUSION

Deferring to the trial court's findings and not supplanting its judgment with our own, we conclude that the trial court had before it sufficient evidence that allowed it to form a firm conviction or belief that the termination of Father's parental rights was in Nathan's best interest. We overrule Father's appellate point attacking the factual sufficiency of the evidence to support the trial court's best-interest finding and we affirm the trial court's order of termination. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: September 19, 2019

12