**Opinion filed February 13, 2020**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00259-CV

_____

## IN THE INTEREST OF T.J., A CHILD

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. CV1844944**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of T.J.'s mother. On appeal, the mother presents two issues in which she challenges the legal and factual sufficiency of the evidence. We reverse and remand.

*Termination Findings and Standards*

In the cause below, the Department of Family and Protective Services sought to terminate the parents' rights to T.J. and R.S. R.S.'s parents have not appealed, and this opinion does not affect the order of termination as to R.S. T.J.'s father is deceased. The trial court terminated the parental rights of T.J.'s mother, Appellant, based upon findings made pursuant to Section 161.001(b) of the Texas Family Code.

*See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2019).[1]  The trial court found that Appellant had committed five of the acts listed in Section 161.001(b)(1)—those found in subsections (A), (C), (D), (E), and (O).  Specifically, the trial court found that Appellant had voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return; had voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months; had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; and had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent for abuse or neglect.  The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child.  The trial court appointed the Department as T.J.'s permanent managing conservator.

In her first issue, Appellant challenges the sufficiency of the evidence to support the findings made by the trial court pursuant to subsections (A), (C), (D), (E), and (O).  In her second issue, Appellant challenges the sufficiency of the evidence with respect to the trial court's best interest finding.

---

[1]We note that the Department did not request that Appellant's parental rights be terminated under Section 161.004 of the Family Code.  That section sets out the requirements for termination of "the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship." FAM. § 161.004(a) (West 2014).  Section 161.004 has been regarded as a mechanism through which the Department may, upon proving a material change in the circumstances of an affected party, defeat a parent's claim of res judicata when the Department seeks termination after a prior petition seeking termination was denied.  *In re K.G.*, 350 S.W.3d 338, 349 (Tex. App.—Fort Worth 2011, pet. denied).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Background Facts*

In August 2018 in the 91st District Court of Eastland County, the Department filed an original petition for the protection of T.J. The Department subsequently filed a motion to transfer the proceedings from another district court in which continuing exclusive jurisdiction over T.J. had previously been established. The 91st District Court granted the Department's motion and ordered that Cause No. CV0504157 from the 35th District Court of Brown County be transferred to the 91st District Court of Eastland County. The appellate record, however, does not contain any documents or orders regarding T.J. that may have been filed in Brown County.

At the time the Department filed the original petition in the 91st District Court (the trial court), T.J.'s maternal grandmother was T.J.'s legal guardian and permanent managing conservator. The record reflects that the Department removed T.J. from the grandmother's home after the grandmother overdosed on methamphetamine while T.J. was in the grandmother's care. Appellant had a strained relationship with her mother and did not live in the home from which T.J. was removed. After T.J.'s removal from the grandmother's home, the trial court entered a temporary order, which, among other things, set out certain requirements and services that Appellant was required to perform in order to have T.J. returned to her care.

Only three witnesses testified at the final hearing: the Department's conservatorship caseworker, the kinship provider with whom T.J. had been placed, and the CASA supervisor. No exhibits were offered or admitted into evidence at the final hearing. The caseworker testified about the grandmother's overdose and about the grandmother subsequently testing positive for methamphetamine while this cause was pending in the trial court. The caseworker also testified that the grandmother failed to comply with the provisions of her court-ordered service plan.

4

The Department requested that the trial court remove the grandmother as T.J.'s permanent managing conservator.

With respect to Appellant, the caseworker testified that Appellant also failed to comply with the provisions of her court-ordered service plan. Appellant submitted to two drug screens: one of which was negative and the other of which was unable to be tested as it was "damaged in transport." According to the caseworker, Appellant had previously been in an abusive relationship, and the caseworker expressed some reservations about the man with whom Appellant was "in a new relationship" because he had been charged twice in the past with assaulting a family member. Additionally, Appellant had moved twice while these proceedings were pending, but the caseworker acknowledged that, at the time of the final hearing, Appellant lived in a home that was appropriate for T.J. The caseworker requested that the trial court terminate Appellant's parental rights because T.J., who was then fourteen years old, needed permanency.

When he was removed from the grandmother's home, T.J. was placed in a kinship home. T.J. had done very well in that home. T.J. had previously expressed a desire to stay in that home; however, as the date of the final hearing neared, T.J. told the caseworker that he "might want to go live with his mother." The caseworker implied that T.J.'s change of heart may have had something to do with the cancellation of the football program at the school in the town in which the placement lived. The week before the final hearing, T.J. told the caseworker that he wanted to live with Appellant. T.J. indicated that everything was good with the placement family but that he "just wants a relationship with his mom." The caseworker did not believe that Appellant, "with her history," was "appropriate"; she feared that placing T.J. with Appellant would be detrimental to T.J. Appellant's "history" was not further detailed at the hearing. The caseworker recommended termination of Appellant's parental rights, but she did not advocate ceasing all communication

between Appellant and T.J. because T.J. missed his mother and wanted to have a relationship with her.

Throughout the case below, Appellant had kept in contact with the Department and had expressed a desire to regain custody of T.J. However, neither T.J. nor his counselor had consented to Appellant exercising any visitation with T.J. until less than three months prior to the final hearing. At that time, the counselor believed that it was appropriate for T.J. to start having visitations with Appellant. Visitations between Appellant and T.J. began less than three months before the final hearing. Appellant subsequently asked the trial court for an extension of time to work her services. The trial court denied Appellant's request.

The placement family expressed an interest in adopting T.J. but indicated that they were willing to be T.J.'s permanent managing conservators and to continue to foster "relationship building" between T.J. and Appellant if the trial court did not terminate Appellant's parental rights. The CASA supervisor testified that CASA was not opposed to parental termination with respect to Appellant but that CASA's recommendation with respect to the relationship between T.J. and Appellant "would more likely be PMC to the kinship placement and allow the family to facilitate that relationship."

*Analysis*

As we stated above, the termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). We note that, in its brief in this court, the Department refers to matters included in an affidavit that was attached to the Department's original petition in this cause. That affidavit, however, was not offered or admitted into evidence in this cause, nor did the affiant testify at the hearing on termination. The affidavit cannot be considered by this court, nor could it have been considered by the trial court, as evidence in this case. *See In re M.G.*, 585 S.W.3d 51, 57 (Tex. App.—Eastland 2019, no pet.); *In re J.E.H.*, 384 S.W.3d

864, 870 (Tex. App.—San Antonio 2012, no pet.). The evidence that was presented in this case was lacking insofar as it related to Appellant. "Parental rights are 'far more precious than any property right,' and when the State initiates a termination proceeding, 'it seeks not merely to infringe that fundamental liberty interest, but to end it.'" *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)). We carefully scrutinize termination proceedings, and we strictly construe involuntary termination statutes in the parent's favor. *Id.*

The Department failed to present any evidence that Appellant voluntarily left T.J. alone or in the possession of another, that Appellant expressed an intent not to return, or that Appellant did not provide adequate support for T.J. Thus, the evidence is legally insufficient to support the trial court's findings under subsections (A) and (C). *See* FAM. § 161.001(b)(1)(A), (C). With respect to subsection (D), the Department failed to present any evidence that Appellant knowingly placed or knowingly allowed T.J. to remain in conditions or surroundings that endangered T.J. The Department also failed to present any evidence to support a finding under subsection (E); nothing in the record indicates that Appellant engaged in any conduct that endangered T.J. or that Appellant knowingly placed T.J. with someone who engaged in conduct that endangered T.J. Accordingly, we hold that the evidence is legally insufficient to support the trial court's findings under subsections (D) and (E). *See id.* § 161.001(b)(1)(D), (E).

And, finally, the Department also failed to prove by clear and convincing evidence that T.J. had been in the conservatorship of the Department "as a result of [T.J.'s] removal from the parent under Chapter 262" for abuse or neglect. *See id.* § 161.001(b)(1)(O); *see also id.* §§ 262.001–.352 (West 2019). The record before us reflects that T.J. was removed from his grandmother, who at that time was T.J.'s legal guardian and permanent managing conservator. No evidence was offered to show that T.J. was removed from a *parent* under Chapter 262 as required by

subsection (O).  While a parent whose rights are terminated based upon a finding under subsection (O) need not be the offending parent, *M.G.*, 585 S.W.3d at 57, subsection (O) seems to require evidence that, at some point, the child was removed from a parent under Chapter 262.  The language used by the legislature in subsection (O) does not cover the situation in which a child is removed from a conservator or a legal guardian who is not a parent.  We note that, in other sections of the Family Code, the legislature distinguished a "parent" from a conservator or legal guardian.  *See, e.g.*, FAM. § 161.004 (permitting termination of parental rights after rendition of an order that previously denied a request to terminate parental rights if, among other things, the circumstances of the child, "parent, sole managing conservator, possessory conservator," or other affected party have materially and substantially changed), § 262.109(a) (requiring notice "to each parent of the child or to the child's conservator or legal guardian" when the Department takes possession of a child under Chapter 262).

The Department cites *In re B.C.* as support for its assertion that the evidence supports a finding under subsection (O).  *In re B.C.*, No. 04-14-00744-CV, 2015 WL 1938679, at *3–4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.).  In that case, the court found that the evidence was legally and factually sufficient to support a finding under subsection (O) because, although the children were subsequently removed from an aunt that was the children's managing conservator at the time of removal from the aunt, the "record and testimony at the termination hearing reflect the children were originally removed from Mother pursuant to Chapter 262 due to neglect because she left them home alone." *Id.* at *3.  Unlike the record in *B.C.*, the record in the present case does not contain any evidence about any previous removal from Appellant under Chapter 262.  We can find no authority that would support a finding under subsection (O) based upon the record and the circumstances in the case before us.

Because the evidence in this case is insufficient to support the findings made by the trial court pursuant to Section 161.001(b)(1), we sustain Appellant's first issue on appeal. We do not address Appellant's second issue as it is not dispositive of this appeal. *See* TEX. R. APP. P. 47.1. This court's ruling does not alter the trial court's appointment of the Department as T.J.'s managing conservator. *See In re J.A.J.*, 243 S.W.3d 611, 615–17 (Tex. 2007).

*This Court's Ruling*

We reverse the trial court's order insofar as it terminated the parental rights of T.J.'s mother, and we remand this cause to the trial court for further proceedings. Any proceeding on remand must be commenced within 180 days of this court's mandate. TEX. R. APP. P. 28.4(c).

JOHN M. BAILEY
CHIEF JUSTICE

February 13, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.