

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-22-00340-CV

IN THE INTEREST OF A.V., A CHILD

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2021-543,252, Honorable William Eichman II, Presiding

April 25, 2023

DISSENTING OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

"Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). I find the system, which is designed to initially reunite families, failed these parents in the following matters:

- removing the child immediately after birth when both the child and mother tested negative for drugs;

- failing to place the child with a family member following removal;

- lack of representation by counsel at the final hearing;

- consideration of inadmissible evidence by a caseworker; and

- termination of father's parental rights solely on marihuana use.[1]

## APPLICABLE LAW

The bond between a parent and child is not given by law. It is endowed by our Creator. *In re J.F.*, 589 S.W.3d 325, 331 (Tex. App.—Amarillo 2019, no pet.) (citing *In re A.M.*, 630 S.W.3d 25, 25 (Tex. 2019) (Blacklock, J. concurring in denial of petition for review)). The natural right existing between parents and their child is of constitutional dimensions. *See Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). A decree terminating the natural right between a parent and a child "is complete, final, irrevocable and divests for all time that natural right . . . ." *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012). Thus, in seeking to permanently sever the parent-child relationship, the trial court must "observe fundamentally fair procedures." *Id.* Consequently, termination proceedings are strictly construed in favor of the parent. *Id.* at 563. Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

The majority is critical of applying the requirement of a "causal connection" between drug use and endangerment as analyzed in *In re L.C.L.*, 599 S.W.3d 79, 84 (Tex. App.—Houston [14th Dist.] 2020) (en banc), *pet. denied,* 629 S.W.3d 909 (Tex. 2021) (Lehrmann, J., concurring). I respectfully dissent and write separately from the majority opinion not because I disagree that drug use during pregnancy may be

---

[1] During closing arguments, the trial court asked, "Can marijuana use, if that's the only drug, be a ground for termination still in Texas?" Counsel for the Department answered, "[n]o . . . that's why the orders for actions necessary is so important in this case." As noted infra, the trial court did not find subsection (O) was violated leaving one to wonder whether father's parental rights should have been terminated. He could not have violated (E) as he did not place the child with mother because the child was removed from them immediately after birth.

endangering conduct, but to highlight the Department's failure to satisfy its heightened burden of proof to show, by clear and convincing evidence, that termination was proper. To support my dissent, a more detailed recitation of the underlying facts is necessary.

## BACKGROUND

The parents have been in a relationship for over fourteen years, and they married in 2012. At the de novo hearing, father indicated they were separated but he had not advised anyone of it. Mother has lived in the same home for approximately sixteen years. Father works in the oil industry and travels outside of Lubbock during the week. Mother works and is a caregiver for her mother. They have stable and appropriate housing, stable employment, and there is no history of domestic violence. There is no history with the Department concerning mother's two older children.[2] Mother suffers from mental health issues. She has used marihuana and began using methamphetamine in 2019 after being sexually assaulted in 2018. She was told by police nothing could be done regarding her attacker, and she resorted to methamphetamines to cope with night terrors. Father is an admitted marihuana user. Due to his long workdays, he was unaware of mother's drug use, and he was not informed by mother's doctor of positive drug test results due to confidentiality issues.

In July 2020, mother went to the hospital to have a laceration treated and discovered she was pregnant. She ceased using methamphetamine due to her pregnancy but relapsed in September and December 2020, and February 2021. At the time of the child's birth in February 2021, however, she and the child tested negative. Despite the negative results, the Texas Department of Family and Protective Services,

---

[2] Father is not the biological parent of the older children.

3

filed an affidavit for emergency removal of the baby.[3]  Although mother offered her adult daughter as a familial placement, the Department did not consider her until one month before the final hearing when A.V. had already been in two separate foster homes.[4]

On February 22, 2021, the Department sought termination of both parents' rights. Although numerous violations of the statutory grounds for termination were alleged, the Department asserted drug use was the primary concern.  Both parents signed family service plans in April 2021, with a completion target date of February 28, 2022, which was the one-year dismissal date for finalizing the case.  However, approximately nine months after the Department sought termination, on December 2, 2021, the associate judge held a final hearing which resulted in termination of parental rights for both parents.

The final hearing before the associate judge was held via Zoom.  The evidence shows the parents were at a rehabilitation facility where mother was attempting to enroll. Mother was on the phone with her caseworker concerning her enrollment.  Father logged into the link for the Zoom hearing on his phone and was placed in a waiting room.  As time passed, he placed his phone in his back pocket and unbeknownst to him, when the case was called, he had been disconnected from the Zoom link and did not join the hearing.[5]

---

[3] The affidavit was not introduced into evidence.  During closing arguments at the de novo hearing, the trial court inquired about the need for emergency removal "even though neither of them tested positive for drugs at the time of the birth," to which counsel for the parents answered, "I don't know why they were taken away, Judge."

[4] There was testimony that Department policy is to place a child with family, but the Department's witnesses testified that mother's adult daughter was not initially considered due to mother's failure to provide contact information.

[5] We disagree with the Department's assertion that the parents wholly defaulted.  They opposed the Department's suit from its inception and were present for at least four hearings prior to the final hearing. They made a good faith effort to appear at the final hearing but were disconnected from the Zoom link.

4

At the de novo hearing, the caseworker testified she informed the parents by letter their rights had been terminated. Mother also testified she and father were not permitted any visitation during the period between the final hearing and the de novo hearing because their rights had been terminated.

At the final hearing, counsel for the parents announced, "[n]either [mother] nor [father] appear to be here . . . she has checked herself into inpatient rehabilitation . . . ." Counsel then moved for a continuance which the trial court denied. He then asked to "be discharged as counsel because I would be unable to effectively assist my client without her being here and able to participate in the hearing - - or him or her being here." The associate judge denied the motion for continuance but granted the motion to withdraw.[6] Thereafter, the hearing proceeded without participation by the parents and without any legal representation to safeguard their parental rights, which are of constitutional dimensions.

The only witness at the final hearing was the caseworker at the time. She was asked whether mother's methamphetamine use would endanger [A.V.]. In what had become a non-adversarial proceeding, she answered, "[i]t alters Mom's brain activity and her way of thinking." She added "even marihuana would affect her ability to take care of

---

[6] The clerk's record does not contain a written motion to withdraw specifying good cause or providing the information required by Rule 10 of the Texas Rules of Civil Procedure. *See generally In re M.H., Jr.*, No. 07-22-00349-CV, 2023 Tex. App. LEXIS 2110, at *5–7 (Tex. App.—Amarillo March 30, 2023, no pet. h.) (mem. op.) (holding the trial court abused its discretion in allowing counsel to withdraw and leaving mother without representation at the final hearing, a critical stage of the proceeding). The clerk's record does contain an "Order Substituting Attorney Ad Litem" signed in May 2022, five months following the request to withdraw.

a child because it would slow her reactions down." She testified it would be in the child's best interest to terminate both parents' rights.[7]

After presentation of testimony from only a caseworker, who was not subjected to cross-examination, the associate judge found the Department presented clear and convincing evidence to support termination of the parents' rights to A.V. on the following grounds:

- knowingly placed or allowed the child to remain in conditions or surroundings which endangered her well-being;

- engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered her well-being; and

- failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child.

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O).[8] The trial court also found that termination of parental rights was in the child's best interest. § 161.001(b)(2).

The parents timely requested a de novo hearing which was held on October 6 and 10, 2022, ten months after the final hearing. The only issues specified for de novo review were the sufficiency of the evidence on the statutory grounds for termination. *See* § 201.015(b). *See also Legarreta v. Alvidrez*, 631 S.W.3d 546, 549 (Tex. App.—El Paso 2021, no pet.) (noting the statute limits the ability to raise new issues not specified in the request for a de novo hearing). Section 201.015(c) provides that in addition to testimony

---

[7] We note that at the de novo hearing, the same caseworker testified, "[a]s far as when I was in the home, I did not see any visual or smell any - - any drug use."

[8] All future references to "section" or "§" are to the Texas Family Code unless otherwise designated.

6

from new witnesses, the referring court in a de novo hearing may consider the record from the final hearing before the associate judge. § 201.015(c).

The court heard testimony from both parents, the caseworker, a Department permanency specialist, and the child's foster mother. The Department's witnesses focused on mother's methamphetamine use and father's marihuana use.

During closing statements, the trial court questioned the emergency removal of the child following negative tests for drugs on both the mother and child. The trial court expressed apprehension on terminating father's parental rights based solely on marihuana use. While seeming to concede marihuana use alone might not be sufficient to support termination of father's rights, the Department emphasized to the trial court the importance of terminating both parents' rights for failing to comply with the order for actions to obtain the return of their child. The Department suggested father being married to mother and knowing of her methamphetamine use justified terminating his rights, despite the undisputed evidence father was unaware of mother's methamphetamine use.

Following the de novo hearing, the trial court signed an order terminating the parents' rights for violating section 161.001(1)(b)(D) and (E) only. Although there was substantial testimony devoted to the parents' alleged failure to complete their services, the court did not make a finding they had violated subsection (O). The court found termination was in the child's best interest.

**ANALYSIS**

The majority relies on *In re R.M.*, No. 07-12-00412-CV, 2012 Tex. App. LEXIS 10239 (Tex. App.—Amarillo Dec. 11, 2012, no pet.) (mem. op.), as horizontal precedent

for affirming the termination order.[9]  *In re R.M.* held that drug use and its effect on a parent's ability to parent may qualify as an endangering course of conduct.  2012 Tex. App. LEXIS 10239, at *9–10.  The opinion continued that "[a] parent's illegal drug use can support termination for endangerment because it exposes the child to the possibility that the parent may be impaired or imprisoned."  *Id.* at *10.

We do not disagree with the holding in *In re R.M.*  However, the termination order before us, as the majority notes, was initially based on a final hearing in which neither parent was represented by counsel.  Also, the Department presented inadmissible and conclusory testimony from a caseworker to support termination.[10]  And although the majority relies on a thorough de novo review with counsel representing the parents, the critical stage of the termination proceeding was the "final hearing," at which the parents were without representation.  *See In re A.L.M.-F.*, 593 S.W.3d 271, 277 (Tex. 2019) (explaining that de novo stage of a termination proceeding is merely a hearing before a different tribunal and not a true trial de novo).  *See also In re J.F.*, 589 S.W.3d 325, 333 (Tex. App.—Amarillo 2019, no pet.) (noting that a de novo hearing "may actually be less important than the trial on the merits before the associate judge").

The majority also relies on mother's drug use as endangering conduct while an older child resided in the home.  Again, I do not disagree with the premise.  However, the source of such reliance is the affidavit of removal which was not introduced into evidence

---

[9] *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (holding that "three-judge panels must follow materially indistinguishable decisions of earlier panels of the same court . . . .").

[10] This Court has reversed a termination order supported by conclusory evidence.  *See In re A.G.D.*, No. 07-15-00201-CV, 2016 Tex. App. LEXIS 688, at *24 (Tex. App.—Amarillo Jan. 22, 2016, no pet.) (mem. op.) (noting that conclusory testimony has "no evidentiary value").

and which is peppered with hearsay statements.[11]  Also, at the de novo hearing, mother was questioned about using drugs around her older child.  The exchange was as follows:

> Q. In September of 2019 you're a mother to [Z.C.].  Did you think about how using methamphetamines would affect him?
>
> A. I did not use drugs at home.

After an objection to the questioning was overruled, the Department continued:

> Q. Did you ever think about how using methamphetamines would affect [Z.C.]?
>
> A. It was a possibility I could have, but it wasn't anything extreme for me.

The majority finds the brief exchange as "ample evidence" to support a finding of endangerment."  But was mother's response sufficient to support the heightened standard of "clear and convincing" evidence?

*In re R.M.* acknowledges that drug use "may qualify as an endangering course of conduct."  2012 Tex. App. LEXIS 10239, at *9.  Subsections (D) and (E) require proof of endangerment as an element of the statutory grounds.  Even if this Court declined to follow *In re L.C.L.*, would the statutory grounds as written not require competent, clear and convincing evidence of endangerment?  Should the Department not be held to its heightened burden of proof to show that drug use resulted in endangerment, where, as here, the child was removed from the parents at the hospital and where evidence of drug use around another child fell short of the clear and convincing standard?

Another distinguishing factor between the case before us and *In re R.M.* is the possibility that drug use may expose a child to the possibility that a parent may be

---

[11] This Court has previously noted that it is "not inclined to disregard the Texas Rules of Evidence in termination cases . . . ."  *In re B.P.*, No. 07-14-00037-CV, 2014 Tex. App. LEXIS 8127, at *18 n.8 Tex. App.—Amarillo July 25, 2014, pet. denied).

impaired or imprisoned. Here, the only evidence at the final hearing, when the parents had no legal representation, was conclusory testimony by a non-expert caseworker that she knew the effects of methamphetamine on the brain and that drug use would affect a parent's ability to take care of her child. Such conclusory testimony amounts to no evidence that the parents would be unable to care for their child. There was no evidence that the parents faced the possibility of imprisonment.

Because I find *In re R.M.* materially distinguishable from the case currently before us, preempting a *Mitschke* situation, I would find legally insufficient evidence to support termination and reverse the termination order based on the Department's failure to produce competent, clear and convincing evidence that drug use alone endangered the child even without application of any "causal connection" required by *In re L.C.L.* The statutory grounds on which termination is based, subsections (D) and (E), both require proof of endangerment as an element. I invite the Texas Supreme Court to resolve the differing opinions among the courts of appeal on drug use alone as a ground for termination. *See In re L.C.L.,* 629 S.W.3d at 909 (noting that the high Court should resolve the conflicting opinions "in the proper case").[12]

### CONCLUSION

Because I would sustain issue one for legally insufficient evidence, I respectfully dissent.

Alex L. Yarbrough<br>
Justice

---

[12] The concurring opinion recognizes that this Court has, post-*In re L.C.L.*, recited in dicta that "mere drug use, standing alone," is not conclusive to support a finding under subsections (D) or (E).

10