

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-24-00229-CV
_____

IN THE INTEREST OF G.W. A CHILD

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 45,599, Honorable James Mosley, Presiding

September 16, 2024

MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, D.W.,[1] appeals from the trial court's order terminating her parental rights to her daughter, G.W. By a sole issue, she challenges the sufficiency of the evidence to support the trial court's best-interest finding. We affirm.

---

[1] To protect the privacy of the parties involved, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d). *See also* TEX. R. APP. P. 9.8(b). Termination against the unknown father was nonsuited without prejudice with the expectation of pursuing termination in the future.

**BACKGROUND**

Appellee, the Texas Department of Family and Protective Services became involved with D.W. in December 2021, one day after G.W.'s birth, due to a lack of bonding and inability to feed the child. Allegations of neglect were ruled out. A year and a half later, the Department became aware that D.W. and her daughter were living in a motel room with frequent traffic from known drug users. D.W. tested positive for methamphetamine use but denied she was using drugs. The motel room was dirty and strewn with trash which created an unsafe environment for the child. D.W. did not have a stable home or any employment. G.W. was removed for neglectful supervision and was eventually placed with D.W.'s maternal aunt and uncle.[2] D.W. was allowed supervised visitation.

The Department implemented a family service plan for D.W. with a goal of family reunification. Her caseworker advised her of the requirements of the plan. A year later, the Department sought termination based on D.W.'s continued drug use, her inability to find employment, and the lack of a stable home. The trial court heard testimony from the caseworker, D.W., and a CASA volunteer. Thereafter, the trial court found that D.W. (1) knowingly placed or knowingly allowed her child to remain in conditions which endangered her physical and emotional well-being; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered her physical or emotional well-being; (3) failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of her child; and (4)

---

[2] Initially, their home was found to be in poor physical condition, but those concerns were remedied.

used a controlled substance in a manner that endangered the health or safety of her child and failed to complete a court-ordered substance abuse treatment program or after completing such program, continued to abuse a controlled substance. The trial court also found that termination of D.W.'s parental rights was in her child's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), and (P), (b)(2).

## APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) of the Code and that termination of that relationship is in the best interest of the child. *See* § 161.001(b)(1), (2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. § 161.206(a). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007.

In reviewing a termination proceeding, the standard for sufficiency of the evidence is that discussed in *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014). In reviewing a best-interest finding, appellate courts consider, among other evidence, the factors set forth in *Holley*, 544 S.W.2d at 371–72.

## STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional magnitude. *See Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Consequently, termination proceedings are strictly construed in favor of

3

the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d at 112–13. However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266.

4

We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## BEST-INTEREST FINDING

D.W. does not challenge any of the statutory grounds for termination and as a result, the trial court's findings related to those grounds are final. Rather, she contends the evidence is insufficient to support the trial court's best-interest finding. We disagree.

The Department was required to prove by clear and convincing evidence that termination of D.W.'s parental rights was in her child's best interest. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable fact finder could have formed a firm belief or conviction that termination of her parental rights was in the child's best interest can we conclude the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* § 263.307(a). To assess the trial court's best-interest finding, we consider factors enumerated in the non-exhaustive list set forth in section 263.307(b) of the Family Code.

5

Additionally, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371–72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The absence of evidence of one or more of these factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27.

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013). The best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

ANALYSIS

Appellant asserts the trial court's best-interest finding is contrary to the overwhelming weight of the evidence. Rather than presenting her argument with legal challenges to the best-interest finding and an analysis of the *Holley* factors, she claims her parental rights were terminated because she is poor, has no transportation, and cannot afford a home "nice enough to satisfy the State." A review of the evidence shows the trial court's best-interest finding is supported by clear and convincing evidence.

The caseworker admitted she and D.W. had a "rocky relationship" and D.W. blamed the "whole system" for her lack of progress with her family plan. Although D.W. made efforts to comply with the requirements of her service plan, her conduct regarding her service plan was described as inconsistent and she did not complete the requirements. She successfully completed a thirty-day residential treatment program for addiction; however, she admitted to relapses and addressed them by "self-reflecting" and isolation. The caseworker testified she requested testing via text messages and email but D.W. no-showed numerous times which the Department interprets as "presumed positives." *See In re T.H.*, No. 07-07-00391-CV, 2008 Tex. App. LEXIS 6107, at *10 (Tex. App.—Amarillo Aug. 12, 2008, no pet.) (mem. op.). D.W. claimed she had no transportation to attend drug testing and blamed the Department for not providing her assistance. The caseworker admitted she was unable to arrange transportation on two of six occasions.[3] But the caseworker testified that D.W. would sometimes delay testing

---

[3] D.W. contacted the caseworker's supervisor and filed a complaint.

for a day which was suspicious since timing is critical in drug testing. According to the caseworker, delayed testing is considered as noncompliance.

D.W. moved frequently which exposed her daughter to others who were involved with drugs. When D.W. was asked if she was aware her drug use could place her child in danger, she answered, "yes" but testified she was working her services to improve her situation. The caseworker testified D.W. lived with a friend at one point but the home could not accommodate a space for her daughter. D.W. reported she had found an apartment but would not provide an address. During the final hearing, she claimed a lease was being prepared but admitted if she obtained the return of her child, they would have to live in a motel until the lease was finalized. Ultimately, she failed to provide proof of stable housing for her child.

D.W. updated the caseworker on her job searches. The caseworker testified D.W. reported she had interviews with two different coffee chains but there was no confirmation she had applied. D.W. claimed she was not offered employment at either chain but did not convey those rejections to the caseworker. She told the caseworker Tesla had offered her a position, but she refused to relocate. She also claimed to be a caregiver making $450 per month but did not provide any documentation of such employment. D.W. testified she suffered from blackouts which prevented her from pursuing some job interviews. She did not, however, report her blackouts to the Department and could not explain how she would care for her child if she experienced blackouts while with her. At the time of the final hearing, she was working part-time for a friend in his construction business but had only been employed for one week. The evidence showed she did not provide proof of suitable employment over the course of the proceedings.

8

The caseworker opined that D.W.'s failure to perform all her services and maintain a drug-free lifestyle was not in the child's best interest.[4] G.W. was thriving in her placement with D.W.'s maternal aunt and uncle. They were bonded and there were no concerns with the placement. The child's needs were being met and although she had no medical needs, she was in speech therapy. The caseworker verified that G.W.'s current placement was interested in pursuing adoption.

D.W. was adamant about having her daughter returned to her but admitted she had no stability. She testified she is bonded with her daughter and enjoys playing with her during their visits. When asked why it was in G.W.'s best interest to be with her, she answered, "because I'm her mother and nobody can love my child like I do." She acknowledged, however, that drug use was not in her child's best interest and testified she would not "mess up." On cross-examination, she vowed to do her best but was reminded that she had a year to do so and did not.[5]

The CASA volunteer testified she had monthly contact with D.W. She had concerns regarding D.W.'s lack of a stable home, lack of employment, and her missed drug screenings. She visited the relative placement's home several times and had no concerns. She described the maternal aunt and uncle as "adoption motivated" and

---

[4] The trial court found the Department proved section 161.001(b)(1)(P) as a predicate ground for termination and although not challenged by D.W., it may be considered in a best-interest analysis. *In re C.H.*, 89 S.W.3d at 28. The Supreme Court recently addressed subsection (P) in *In re R.R.A.*, 687 S.W.3d 269 (Tex. 2024). The Court held that a fact finder may infer the risk of endangerment to a child from a parent's drug use and that the Department need not establish a direct causal link between drug use and endangerment. *Id.* at 278. A reviewing court should not evaluate drug-use evidence in isolation but should consider additional evidence showing drug use presents a risk to a parent's ability to parent. *Id.*

[5] Just before the hearing commenced, the trial court denied D.W. an extension which she requested to continue working her services and prove she could provide her daughter with a stable home.

recommended termination of D.W.'s parental rights as being in G.W.'s best interest. She did not believe D.W. would complete the required services "because she doesn't feel like she needs to. She feels she's already done everything."

G.W. was too young to express her desires. The record shows G.W.'s relative placement was meeting all her needs and wished to adopt her in the future. D.W. did not demonstrate she had the present or future ability to meet her child's need for a safe, stable, and permanent home. Her failure to complete her family service plan is relevant to some of the *Holley* factors. *In re S.A.M.*, No. 04-18-00607-CV, 2019 Tex. App. LEXIS 1020, at *16 (Tex. App.—San Antonio Feb. 13, 2019, pet. denied) (mem. op.). Based on the evidence presented, we find the evidence is legally and factually sufficient to support the trial court's best-interest finding. D.W.'s sole issue is overruled.

## CONCLUSION

The trial court's *Order of Termination* is affirmed.

Alex Yarbrough
Justice

10